Dated this 27th day of December 2008

# LOAN AGREEMENT

BETWEEN:

**PHILLIP L. ROSEMANN IRA**
**C/O ENTERPRISE BANK & TRUST, CUSTODIAN (1)**
**DISTINCTIVE PROPERTIES (UK) LIMITED (2)**
**DEREK SMITH (3)**

**Lynn Whaley Vogel**
Attorney at Law
P.O. Box 50295
Clayton, MO 63105
lawvogel@argos-stl.com

THIS AGREEMENT is made the 27th day of December 2008 BETWEEN

(1) **PHILLIP L. ROSEMANN IRA, C/O ENTERPRISE BANK & TRUST, CUSTODIAN,** 150 N. Meramec Ave., St. Louis, MO 63105, U.S.A. ("the Lender") and

(2) **DISTINCTIVE PROPERTIES (UK) LIMITED** of Little Farm Nursery North Town Moor, Maidenhead, Berkshire SL6 7JR, ("the Borrower") and

(3) **DEREK SMITH** of Magpie Cottage, Christmas Common, Oxon, OX9 5HR ("the Surety").

NOW IT IS AGREED as follows:

### 1. Definitions

In this agreement

1.1   "the advance" means $790,398.00

1.2.  "the Interest Rate" means 18% per annum

1.3   "the Redemption Date" means 26th December 2009

1.4   "the Schedule" means the schedule of the Surety's assets and liabilities attached hereto and marked "The Schedule"

1.5   "the Lender's Solicitors" means Messrs Lynn Whaley Vogel, PO Box 50295, Clayton, MO 63105;

### 2. Agreement for advance

The Lender agrees with the Borrower to lend the Advance to the Borrower upon the following terms, conditions and provisions of this agreement.

### 3. Purpose of advance

The monies are lent by way of assistance in relation to cash flow for the business purposes of the Borrower.

## 4. Repayment of advance

4.1 In consideration of the Advance the Borrower undertakes to repay in the same currency as that in which it was paid the Advance to the Lender free from any legal or equitable right of set-off on the Redemption Date or, if earlier, immediately on demand if:

    4.1.1 the Borrower or the Surety fails to comply with any term, condition, covenant or provision or to perform any of his obligations or liabilities under this agreement;

    4.1.2 any representation or warranty given by the Borrower or the Surety to the Borrower is or becomes incorrect;

    4.1.3 any judgement or order made against the Borrower or the Surety by any court is not complied with within 14 days;

    4.1.4 the property of the Borrower or the Surety becomes subject to any forfeiture or execution, distress, sequestration or other form of process;

    4.1.5 if a mortgagee takes possession of or exercises or seeks to exercise any power of sale or of an appointment of a receiver in relation to any property of the Borrower or of the Surety;

    4.1.6 in the case of an individual:

        (a) the Borrower or the Surety becomes subject to an interim order or makes a proposal for a voluntary arrangement under Part VIII of the Insolvency Act 1986 or enters or seeks to enter into any other form of composition or arrangement with his creditors whether in whole or in part;

        (b) a petition is presented for the Bankruptcy of the Borrower or of the Surety;

        (c) the Borrower or the Surety dies or becomes of unsound mind; or

    4.1.7 in the case of a company:

(a) the Borrower or any Surety ceases or threatens to cease to carry on, or disposes or threatens to dispose of, its business or a material part of its business;

(b) the Borrower or the Surety makes a proposal for a voluntary arrangement under Part I of the Insolvency Act 1986 or enters or seeks to enter into any other form of composition or arrangement with its creditors whether wholly or in part;

(c) a petition is presented for the making of an administration order in respect of the Borrower or the Surety;

(d) an administrative receiver is appointed in respect of the whole or any part of the undertaking of the Borrower or the Surety; or

(e) a petition is presented in any court or a meeting is convened for the purpose of considering a resolution for the winding up of the Borrower or the Surety (except in the case of a reconstruction or amalgamation that has the previous approval in writing of the Lender).

## 5. Interest

The Borrower undertakes with the Lender to pay to the Lender on the Redemption Date interest on the Advance at the Interest Rate from the date of this Agreement, such interest to be payable as well after as before any demand or judgement or the administration or liquidation or bankruptcy or death or insanity of the Borrower.

## 6. Costs, charges, expenses and other liabilities

6.1 The Borrower undertakes with the Lender to pay to the Lender on demand and on a full and unlimited indemnity basis all costs, charges, expenses and liabilities paid and incurred by the Borrower (whether

directly of indirectly) in relation to this agreement and the obligations owed under and associated with this agreement (including all commission, legal and other professional fees and disbursements and VAT on them) together with interest from the date when the Lender becomes liable for them until payment by the Borrower at the Interest Rate, such interest to be payable in the same manner as interest on the Advance.

6.2 Without prejudice to the generality of the provisions of that clause the Borrower's liability under clause 5.1 will include not only those costs, charge, expenses and liabilities that would otherwise be allowable on the taking of an account between a mortgagor and mortgagee but also (and in so far as they are not so allowable) those incurred in relation to or arising out of:

    6.2.1 the contemplation and institution of all proceedings and other action in connection with the enforcement of this agreement;

    6.2.2 the contemplation and institution of all proceedings and other action (whether against the Borrower or otherwise) for the payment or discharge of the money and liabilities associated with this deed;

    6.2.3 the exercise or contemplated exercise of any power, right or discretion conferred by this agreement;

    6.2.4 any default by the Borrower or the Surety in compliance with the obligations imposed by the terms of this agreement.

6.3. In the event the Borrower is in default of either the payment of the interest due of $142,271.64 or the repayment of the capital sum of $790,398.00 then:-

    6.3.1 The Lender shall be entitled to recover all outstanding sums in full from the Borrower; and

    6.3.2 Interest shall continue to be charged to the Borrower at the rate of Twenty-Five Per Cent (25%) per annum from the date of such default until payment in full.

## 7. Borrower's representations and warranties

The Borrower represents and warrants to the Lender that:

7.1 the execution of, and the observance and performance of his obligations under this agreement does not and will not contravene any charge, mortgage, lease, loan facility or other agreement; and if the Borrower is a company

7.2 the execution of, and observance and performance of its obligations under this agreement does not and will not contravene any of the provisions of its Memorandum and Articles of Association.

## 8. Guarantee and indemnity

8.1 The Surety guarantees (not only as guarantee but also as a principal debtor) to pay or discharge on demand all money and other obligations and liabilities agreed to be paid or discharged by the Borrower under this agreement.

8.2 The Surety also agrees to indemnify the Lender on demand from and against any loss the Lender may incur as a result of or in connection with the Borrower's failure to pay or discharge the said money, obligations and liabilities.

8.3 The guarantee and indemnity constituted by this agreement shall not be discharged or affected by any failure of or defect or informality in the agreement or by any legal limitation, disability or incapacity of the Borrower or, if the Borrower is a company, lack of any authority of any director or other person appearing to be acting for the Borrower in connection with this agreement.

## 9. Surety's representations, warranties and undertakings

The Surety represents, warrants and undertakes to the Lender that:

9.1 the Schedule is a true, accurate and current statement of his assets and liabilities;

9.2 save as disclosed in the Schedule no other party has any interest, whether legal, equitable or otherwise, in the assets set out therein;

9.3 he will not make any adverse material change to his assets and liabilities without the prior consent in writing of the Lender, such consent to be requested through the Lender's Solicitors;

9.4 he will provide a current list of assets including receivables three months prior to the due date under this agreement and that he will allow the Lender to collect against those assets or receivables in the event of default;

9.5 he will forthwith procure for the benefit of the Lender a policy of life assurance with an insurance company of good repute in a sum not to be less than the amount of the Advance together with interest for a period not less than the term of the loan and forthwith upon the issue of the life policy he will forward the same to the Lender's Solicitors who will hold the same to the order of the Lender as additional security for and pending repayment of the Advance and interest.

9.6 the execution of, and the observance and performance of his obligations under this agreement does not and will not contravene any charge, mortgage, lease, loan facility or other agreement; and, if the Surety is a company

9.7 the execution of, and observance and performance of its obligations under this agreement does not and will not contravene any of the provisions of its Memorandum and Articles of Association.

## 10. Enforcement against the surety

10.1 A certificate of the amount being due under this agreement signed on behalf of the Lender shall be conclusive evidence for all purposes against the Surety unless manifestly incorrect.

10.2 The Lender shall be entitled to enforce or have recourse to all or any remedies which may be available to him for recovery of or discharge of

the money and other obligations and liabilities due and owing under this agreement.

10.3 In particular (and without prejudice to the generality of the terms of clause 9.2) prior to the enforcement of the guarantee and indemnity in this agreement the Lender shall be under no obligation to take any steps to recover or enforce any money and other liabilities and obligations due from or owing by the Borrower under this agreement.

## 11. Restriction of surety's rights

Until all money obligations and liabilities due to or to become due from the Surety have been paid and discharged in full the Surety shall not:

11.1 take any steps to enforce any right or claim against the Borrower in respect of any monies paid by the Surety to the Lender under this agreement; or

11.2 exercise any rights as guarantor in competition with or in priority to any claims of the Lender.

## 12. Indulgence and waiver

The Lender may at any time, without discharging or in any way prejudicing this agreement or any remedy of the Lender under this agreement, grant to the Borrower or the Surety or to any other person time, indulgence, further credit, loans or advances, or enter into any arrangement or variation of rights or, either in whole or in part, release, abstain from perfecting or enforcing, or neglect or fail to perfect or enforce any remedies, guarantees or rights which he may now or subsequently have from or against the Borrower or the Surety or any other person.

## 13. Demands and notices

13.1 A demand or notice by the Lender under this agreement shall be deemed to have been properly served on the Borrower or the Surety if served:

13.1.1 personally on the Borrower or the Surety, or if the Borrower or the Surety is a company any one of the directors or the secretary of the Borrower or the Surety

13.1.2 by first class letter post, telex or fax addressed to the Borrower or the Surety at or by delivery to his usual or last known place of abode or business, or if the Borrower or the Surety is a company its registered office or at any of its principal places of business.

13.2 Service shall be deemed to be effected notwithstanding the death or dissolution of the Borrower or the Surety:

13.2.1 at 10 am on the second business day immediately following the day of posting if given by first class letter post irrespective of the time or date of actual delivery or of lack of delivery;

13.2.2 when dispatched if given by telex or fax;

13.2.2 when left at the property concerned if delivered.

13.3 The methods of service described in clause 8.1 are in addition to and without prejudice to any other method of service prescribed or permitted by law.

13.4 If the expression "the Borrower" or "the Surety" includes more than one person service on any one person shall be deemed to constitute service upon all such persons.

## 14. Validity and severability

14.1 Each of the provisions of this agreement is severable and distinct from the others and if at any time one or more of such provisions is or becomes invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not be affected or impaired.

14.2 If this agreement is executed by or on behalf of more than one person and any one or more of those persons is not bound by its provisions (whether by reason of lack of capacity or improper execution or for any other reason) the remaining parties shall continue to be so bound as if those not bound had not been parties to the agreement.

## 15. Interpretation

15.1 Unless the context otherwise requires:
- 15.1.1 the singular includes the plural and vice versa;
- 15.1.2 references to persons includes references to firms companies or corporations and vice versa;
- 15.1.3 references to the masculine gender include references in the feminine and neuter genders and vice versa.

15.2 Unless the context otherwise requires the expressions "the Lender" and "the Borrower" and "the Surety" include their respective successors and assigns whether immediate or derivative and where appropriate the survivors or survivor of them.

15.3 All agreements, undertakings, representations and warranties given or implied in this agreements by more than one person shall be deemed to have been given jointly and severally by those concerned.

15.4 The clause headings do not form part of this agreement and shall not be taken into account in its construction or interpretation.

15.5 Any reference to a clause or paragraph or a schedule is to one in this agreement so numbered or named.

15.3 All agreements, undertakings, representations and warranties given or implied in this agreements by more than one person shall be deemed to have been given jointly and severally by those concerned.

15.4 The clause headings do not form part of this agreement and shall not be taken into account in its construction or interpretation.

15.5 Any reference to a clause or paragraph or a schedule is to one in this agreement so numbered or named.

## 16 Governing law and jurisdiction

16.1 This agreement shall be governed by and construed in accordance with the Laws of England applicable to contracts wholly to be performed therein.

16.2 It is irrevocably agreed for the exclusive benefit of the lender that the courts of England or the State of Missouri, U.S.A, at the lender's discretion, are to have jurisdiction to settle any disputes which September arise out of or in connection with this agreement and that accordingly any suit, action or proceedings arising out of or in connection with this agreement September be brought in such courts.

16.3 Nothing in this clause shall limit the Lender's right to take proceedings against the Borrower in any other court of competent jurisdiction, nor shall the taking of proceedings in one or more jurisdictions preclude the taking of proceedings in any other jurisdiction, where concurrently or not.

**Executed** as a deed by
**DISTINCTIVE PROPERTIES (UK) LIMITED:**

Director _[signature]_

Secretary

**Signed** as a deed by
**DEREK SMITH**

_[signature]_

## Asset & Liabilities Statement for
## Derek John Smith

| Asset | Value | Loan | Net |
|---|---|---|---|
| Magpie Cottage | £1,500,000 | £900,000 | £600,000 |
| The Grand Hotel | £900,000 | £300,000 | £600,000 |
| Land – Bracknell (Morrison) | £4,250,000 | None (£1,000,000 to be paid on completion)* | £3,250,000 |
| Land – Bracknell (Taylor) | £2,550,000 | None (£1,000,000 to be paid on completion)* | £1,550,000 |
| Land – Wokingham (Bennetts) | £2,500,000 | None (£1,800,000 to be paid on completion)* | £700,000 |
| Land – Pewsey | £1,250,000 | None (£475,000 to be paid on completion)* | £775,000 |
| Hinton Grange Hotel, Bath | £2,200,000 | £900,000 | £1,300,000 |
|  |  | £2,000,000 unsecured loans |  |
| **TOTAL** | **£16,350,000** | **£4,400,000*** | **£8,775,000** |

*The sums in parenthesis do not form part of the total of the Loans as they are sums to be paid on completion of the developments
** Plus varying US Loans